UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHNNY R. GAFFNEY,

    Plaintiff,

v.

Case No. 3:22-cv-1213-BJD-MCR

STEPHEN SCIBELLI, M.D., and
CENTURION OF FLORIDA, LLC,

    Defendants.
_____

## **ORDER**

### I. Status & Background

Plaintiff Johnny Gaffney, a sixty-three-year-old inmate of the Florida penal system, is proceeding on a complaint for the violation of civil rights against Centurion of Florida, LLC, and Dr. Stephen Scibelli, a neurosurgeon (Doc. 1; Compl.). He alleges Defendants "are providing inadequate medical treatment for [his] serious medical condition [a lower back injury]." *See* Compl. at 5. Plaintiff does not allege an outright denial of medical care. In fact, he acknowledges he was diagnosed with sciatica in about 2011; Dr. Scibelli performed surgery in April 2018; and he has had some follow-up appointments since then. *Id.* at 4-5, 8-9. However, Plaintiff alleges Dr. Scibelli routinely intentionally refused to show up for his appointments at Jacksonville

Memorial Hospital (JMH) because he (the doctor) did not like having to deal with the Florida Department of Corrections' (FDC's) security protocols, which requires that he "surrender his cell phone while on the FDC wing of the hospital." *Id.* at 8-9.

Plaintiff alleges Dr. Scibelli informed him in 2019 that he had to have a second surgery on his back, which was approved, but Centurion did not schedule the appointment. *Id.* at 5-6. When Plaintiff inquired or complained about the failure to schedule the recommended and approved surgery, Centurion scheduled a follow-up appointment with Dr. Scibelli for September 29, 2021. *Id.* at 6. For that appointment, Plaintiff was transported from Desoto Correctional Institution (DCI), in Arcadia, Florida, to the Reception and Medical Center (RMC), which is closer to JMH. Dr. Scibelli failed to show for Plaintiff's next scheduled appointment on October 7, 2021. *Id.* The appointment was rescheduled, but Dr. Scibelli failed to show on the following additional dates: December 2, 2021; January 13, 2022; February 10, 2022; and February 24, 2022. *Id.* at 6-8. All the while, Plaintiff remained at RMC.

Plaintiff assert that, because it took so long for him to see Dr. Scibelli after the September 2021 appointment, the FDC transported him back to DCI, which is his assigned prison, so he would not have to be "reclassif[ied] . . . for another institution." *Id.* at 8. Each transfer requires that he carry all his

personal property on his shoulders, which aggravates his sciatica. *Id.* at 8, 10. Plaintiff alleges Centurion knows of Dr. Scibelli's penchant for not showing up for scheduled appointments but refuses to change doctors "to save costs." *Id.* at 9, 12. Plaintiff seeks declaratory relief, injunctive relief, and compensatory and punitive damages. *Id.* at 15-16.

Defendants separately move to dismiss the claims against them (Docs. 8, 9), arguing Plaintiff fails to state a plausible deliberate indifference claim because his allegations demonstrate he has received medical care and he merely objects to how that care is delivered, and his allegations are conclusory. *See* Doc. 8 at 8-9; Doc. 9 at 4-6. Additionally, Dr. Scibelli argues he is not a "state actor," and Centurion moves to strike Plaintiff's request for punitive damages. *See* Doc. 8 at 5-6; Doc. 9 at 5.[1] Plaintiff opposes the motions to

---

[1] Defendants do not dispute that Plaintiff's back injury constitutes a serious medical need. *See* Doc. 8 at 7-8; Doc. 9 at 4-5. With respect to Dr. Scibelli's assertion that he is not a state actor, Plaintiff alleges Dr. Scibelli was under contract with Centurion or the FDC and provided care for inmates at JMH on a special FDC wing of the hospital. *See* Compl. at 7. These allegations, accepted as true, permit the reasonable inference Dr. Scibelli was a "state actor" at the relevant times. *See Carswell v. Bay Cnty.*, 854 F.2d 454, 456 (11th Cir. 1988) ("[A] private physician who is under contract with a state to provide medical care to inmates acts 'under color of state law for purposes of section 1983 when undertaking his duties' to treat an inmate."). *See also Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986) (holding the district court erred "in concluding that a physician who contracts with the state to provide medical care to inmates does not act under color of state law"). Whether Dr. Scibelli indeed was a state actor depends on an analysis of facts outside the complaint and, thus, is an issue that cannot be resolved at this juncture.

dismiss (Docs. 13, 16, 17), and he has recently filed an emergency motion for preliminary injunction (Doc. 23; Pl. Mot.), which Centurion opposes (Doc. 27; Resp.).[2]

## II. Motions to Dismiss

Liberally construing Plaintiff's *pro se* allegations and accepting them as true, which the Court must do on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court concludes Plaintiff alleges enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting his claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). That Plaintiff received some medical treatment for his back injury does not mean he fails to state a claim for deliberate indifference.

If true that Dr. Scibelli intentionally failed to show for multiple appointments with a patient he knew needed surgery simply because he did not want to be inconvenienced by the FDC's security protocols, and further accepting the delay caused Plaintiff to suffer unnecessarily, Plaintiff states a plausible deliberate indifference claim against Dr. Scibelli. A delay in providing necessary medical treatment for non-medical reasons can constitute deliberate indifference. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704

---

[2] When Plaintiff filed his motion, he was housed at Desoto Correctional Institution (DCI); he is now at RMC, though it is unclear whether his transfer there is temporary.

4

(11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference."). *See also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("Deliberate indifference to a prisoner's serious medical needs violates the eighth amendment because denying or delaying medical treatment is tantamount to 'unnecessary and wanton infliction of pain.'").

As to Centurion, accepting as true the non-conclusory allegations that it is well known Dr. Scibelli routinely fails to show up for appointments with inmates requiring specialized care, but Centurion refuses to schedule appointments with a different doctor solely to save money, Plaintiff alleges enough to permit the reasonable inference that Centurion had a custom or policy that constituted deliberate indifference and caused a constitutional violation. Of course, Centurion may consider cost in satisfying its contract with the FDC to provide healthcare for state inmates. *See Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1276 (11th Cir. 2020) (quoting with alteration *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard ... does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."). However, the Eleventh Circuit has ruled that

"systemic deficiencies [in a prison's health system] can provide the basis for a finding of deliberate indifference." *Rogers v. Evans*, 792 F.2d 1052, 1058-59 (11th Cir. 1986).

> A series of incidents closely related in time may disclose a pattern of conduct amounting to deliberate indifference. Repeated examples of delayed or denied medical care may indicate a deliberate indifference by prison authorities to the suffering that results.

*Id.* (internal citations omitted). Liberally construed, Plaintiff's allegations permit the reasonable inference that Centurion knew of a systemic or gross deficiency as it related to Dr. Scibelli's care of inmates, such that inmates requiring treatment with Dr. Scibelli "effectively [were] denied access to adequate medical care." *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Defendants' arguments that Plaintiff does not "support" his allegations with "evidence or documentation" are misplaced in a motion to dismiss under Rule 12(b)(6). *See* Doc. 8 at 8; Doc. 9 at 4. Whether Plaintiff can prove a claim for deliberate indifference is more properly raised in a Rule 56 motion with supporting records, affidavits, and other relevant evidence. Plaintiff alleges enough to nudge the claims "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Moreover, given Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs, a standard that is equated

6

with "reckless disregard," *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023), his request for punitive damages is not due to be stricken, *see Barnett v. MacArthur*, 715 F. App'x 894, 905 (11th Cir. 2017) ("Punitive damages are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights.'").

### III. Plaintiff's Motion for Injunctive Relief

Plaintiff's motion concerns his transfers between DCI and RMC for his medical treatment. He seeks relief solely from Defendant Centurion, not Dr. Scibelli. Plaintiff asserts the "continual[] transfer[s]" from DCI to RMC have caused a new injury (damage to his left shoulder) and worsening of his back injury because of the amount of property he must carry during each transfer. *See* Pl. Mot. at 2-3, 5. He explains that he uses a cane (in his right hand) because of his back injury, which forces him to carry his belongings over his left shoulder. *Id.* at 3. When he filed the motion, Plaintiff was scheduled to be seen in the cardiac and respiratory clinic for renewal of the following medical passes: lower bunk; cane; no pushing or lifting more than ten pounds; and no prolonged standing. *Id.* at 4. Plaintiff seeks an order prohibiting Centurion from transferring him to RMC for further treatment; he says he would rather "live with [the] conditions" than receive treatment if he cannot get that

treatment closer to where he is housed (at DCI). *Id.* at 5, 10. However, he clarifies that he is "not refusing medical treatment." *Id.* at 8.

In its response, Centurion argues Plaintiff's "allegations in his [motion] have only a tenuous connection to the allegations in his [c]omplaint," and he does not otherwise demonstrate a likelihood of success on the merits of his claim. *See* Resp. at 3. Additionally, Centurion contends Plaintiff offers no evidence demonstrating that the transfers have caused a new injury or worsened his back injury. *Id.* at 4. Centurion provides a copy of an April 18, 2023 x-ray report, which shows Plaintiff's left shoulder has no fracture or dislocation but he has "[d]egenerative joint disease." *See* Doc. 27-1. Centurion also maintains it has no control over inmate transfers, and it does not appear Plaintiff attempted to first seek relief through the prison grievance process. *Id.* at 7-8. *See also* Doc. 27-2. Finally, Centurion observes that the relief Plaintiff seeks from the Court—to prevent further transports for medical treatment at RMC or JMH—he can obtain himself "by simply refusing the medical care that he has sought." *Id.* at 8.

Injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction,[3] "is an 'extraordinary and drastic remedy,' and

---

[3] The primary distinction between a temporary restraining order and a preliminary injunction is that the former is issued *ex parte*, while the latter requires "notice to the adverse party." Fed. R. Civ. P. 65(a), (b). *See also* M.D.

8

[the movant] bears the 'burden of persuasion.'" *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). To demonstrate entitlement to injunctive relief, a movant must show the following four prerequisites:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). With respect to the second prerequisite, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel*, 234 F.3d at 1176. Moreover, the request for injunctive relief must be related to the claims raised in the operative complaint. *See Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997), *opinion amended on reh'g*, 131 F.3d 950 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit.").

Plaintiff fails to carry his burden to demonstrate injunctive relief is warranted. Even though he states a plausible claim for deliberate indifference

---

Fla. R. 6.01, 6.02 (describing the requirements for the issuance of temporary restraining orders and preliminary injunctions).

against Centurion, his allegations alone fail to show he is likely to succeed on the merits of that claim. Alleging a plausible deliberate indifference claim against a healthcare company based on a theory of widespread abuse or systemic healthcare deficiencies is a far cry from proving (or being likely to prove) such a claim. *See S. Wine & Spirits of Am., Inc. v. Simpkins*, No. 10-21136-Civ, 2011 WL 124631, at *2 (S.D. Fla. Jan. 14, 2011) ("A substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated. It is not enough that a merely colorable claim is advanced.").

Moreover, to the extent Plaintiff seeks relief related to a new shoulder injury, his request for relief is unrelated "to the claims raised in the operative complaint." *See Kaimowitz*, 122 F.3d at 43. He is proceeding in this action against Centurion and Dr. Scibelli based on a delay in medical care for a back injury. He has not filed a complaint against an appropriate defendant based on an alleged shoulder injury. And, as Centurion rightly notes, the FDC controls inmate transport and housing placement. FDC is not a party to this action.[4] The Court appreciates that Plaintiff is in a tough position—choosing

---

[4] If Plaintiff indeed has medical passes that FDC officials are not honoring when Plaintiff is transferred between institutions, Plaintiff should seek appropriate relief through the prison grievance process or raise the issue with medical providers who have requested, recommended, or issued the passes.

10

between getting the care he needs or denying care because he has difficulty with transport—but, as an incarcerated person, he is not entitled to mandate the location of his medical care. No physician has determined Plaintiff is unfit for travel to and from his medical appointments. *See* Doc. 27-2 ¶ 8 (Dr. Lay's declaration averring, "[Plaintiff's] medical records do not suggest that he is medically unstable for transport to RMC or to [JMH]"). It also appears his request for relief may be moot because he filed a notice of change of address on July 24, 2023, indicating he is now housed at RMC, though it is not clear whether this is a temporary relocation solely for medical services. *See* Doc. 26.

In consideration of the facts and issues, the Court finds it prudent to refer this case to the assigned magistrate judge for an early settlement conference at which Plaintiff hopefully will have legal representation. The issues are narrow, and the parties may benefit from early negotiations before engaging in discovery and other motion practice. Additionally, it appears at least one of Plaintiff's requests for relief included in his complaint is moot. For instance, he seeks injunctive relief "in the form of having no further appointments with Dr. Scibelli." *See* Compl. at 14. In his responses to Defendants' motions to dismiss, Plaintiff asserts he is treating with a new neurosurgeon at JMH because Dr. Scibelli no longer works there. *See* Doc. 17 at 4.

Accordingly, it is

**ORDERED:**

1. Defendant Scibelli's motion to dismiss (Doc. 8) is **DENIED**.

2. Defendant Centurion's motion to dismiss (Doc. 9) is **DENIED**.

3. Defendants shall answer the complaint (Doc. 1) within **twenty days** of the date of this Order.

4. Plaintiff's emergency motion for preliminary injunction (Doc. 23) is **DENIED**.

5. This case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff for purposes of a settlement conference. If an attorney accepts the limited pro bono appointment, the Court will refer the case to the assigned magistrate judge for a settlement conference. However, the Court encourages the parties to attempt to settle the case privately in the meantime.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of August 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Johnny R. Gaffney
Counsel of Record